# UNITED STATES DISTRICT COURT
## for the SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **LINDA L. SCHADENFROH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| *vs.* | ) **CAUSE NO. 1:13-cv-223-SEB-DKL** |
| | ) |
| **CAROLYN W. COLVIN, Commissioner** | ) |
| **of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Linda Schadenfroh applied for disability-insurance benefits and supplement-security-income disability benefits under the Social Security Act due to an alleged disability commencing in August 2009. The defendant Commissioner of Social Security denied her application and she now invokes judicial review of that decision. The assigned district judge referred this Cause to this magistrate judge for preparation of a report and recommendation.

### Standards

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports

the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th

Cir. 2004). This limited scope of judicial review derives from the principle that Congress

has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot
> engage in our own analysis of whether [the claimant] is severely impaired as
> defined by the SSA regulations. Nor may we reweigh evidence, resolve
> conflicts in the record, decide questions of credibility, or, in general,
> substitute our own judgment for that of the Commissioner. Our task is
> limited to determining whether the ALJ's factual findings are supported by
> substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While

review of the Commissioner's factual findings is deferential, review of her legal

conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to result in death or has lasted or can be expected to last

for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A).

A person will be determined to be disabled only if her impairments "are of such severity

that [she] is not only unable to do [her] previous work but cannot, considering [her] age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of

all of an applicant's impairments shall be considered throughout the disability

determination process. 42 U.S.C. § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the applicant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy. 20 C.F.R. § 404.1545. At the fourth step, if the applicant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and her RFC, she will

not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may

request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

Ms. Shadenfroh's application for benefits was denied on initial and reconsideration reviews. An ALJ held a hearing during which Ms. Shadenfroh and a vocational expert testified. Ms. Shadenfroh was represented by current counsel during that hearing.

At step one of the five-step process, the ALJ found that Ms. Shadenfroh has not engaged in substantial gainful activity since August 2009, her alleged onset of disability. At step two, she found that Ms. Shadenfroh has the severe impairments of degenerative disc disease; history of right-knee fracture; pain, swelling, mild chondromalacia, Baker's cyst, and ligament degeneration in the left knee; carpal tunnel syndrome in both hands;

---

[1] By agreement with the SSA, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

facial injuries with associated pain resulting from a motor-vehicle accident; fibromyalgia; obesity; major depressive disorder; and anxiety.

At step three, the ALJ found that Ms. Shadenfroh does not have an impairment or combination of impairments that meet or medically equal any of the listings. She examined listings 1.04 (disorders of the spine) for degenerative disc disease; 1.02A (major dysfunction of a joint(s) (due to any cause)) for knee problems, carpal tunnel syndrome; 11.14 (peripheral neuropathies) for carpal tunnel syndrome; all 11.00 listings (neurological) for facial pain; 1.00Q (musculoskeletal system), 3.00I (respiratory system), and 4.00I (cardiovascular system) for obesity; 14.06 (undifferentiated and mixed connective tissue disease), 14.00D5 (autoimmune disorders) and 14.09 (inflammatory arthritis) for fibromyalgia; and 12.04 (affective disorders) and 12.06 (anxiety-related disorders) for depression and anxiety.

For steps four and five, the ALJ determined Ms. Shadenfroh's RFC. She found that Ms. Shadenfroh could perform "light" work with the following restrictions:

- alternate sitting and standing.
- occasionally balance, stoop (never repetitively below the waist), and crouch.
- no kneeling, crawling, or climbing ramps, stairs, ladders, ropes, or scaffolds.
- occasionally reach, but never with both upper limbs at or above shoulder level.
- occasional handling and fingering with both upper limbs.
- avoid all exposure to vibration, unprotected heights, and dangerous moving machinery.
- absent one day per month.
- only simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements.

At this RFC, the ALJ found that Ms. Shadenfroh could not perform any of her past relevant work.

At step five, the ALJ obtained the testimony of a vocational expert because Ms. Shadenfroh's non-exertional functional limitations prevented the performance of substantially all work at the "light" level. Considering her age (47 years), education (at least high school or equivalent, and able to communicate in English), transferability of work skills (irrelevant), and her RFC (as defined by the ALJ above), the vocational expert testified that three jobs exist that she could perform, with the following numbers:

- usher — 117 jobs existing in the Indiana economy, 7,949 nationally.
- children's attendant — 125 jobs in Indiana, 8,475 nationally.
- baker helper — 2,112 in Indiana, 93,577 nationally.

The ALJ found that these numbers of jobs are significant, that Ms. Shadenfroh could make a successful adjustment to these jobs, and, therefore, that she is not disabled.

The Commissioner's Appeals Council denied Ms. Shadenfroh's request for review, (R. 1), which rendered the ALJ's decision the final decision of the Commissioner on her application and the one that the Court reviews.

## Discussion

Ms. Shadenfroh contends that the ALJ committed two errors in his decision that warrant a reversal and remand.

**The ALJ's accounting for difficulties in concentration, persistence, or pace in her**

**hypothetical.** The ALJ specifically found that Ms. Shadenfroh has "marked difficulties in maintaining concentration, persistence, or pace." (R. 22.) Ms. Shadenfroh argues that, by not including this limitation in the ALJ's hypothetical to the vocational expert, the ALJ failed to fully inform the expert of all of Ms. Shadenfroh's functional limitations, which rendered the expert's testimony of existing jobs, and the ALJ's reliance thereon, unsupported by substantial evidence.

In assessing the severity of Ms. Shadenfroh's mental impairments, the ALJ explicitly applied the "special technique" provided in 20 C.F.R. § 404.1520a, (R. 21), which requires rating the degree of a claimant's functional limitations in the four broad functional areas described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("*Listings*") § 12.00C: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The degree of limitation in the first three functional areas is rated on a scale of "none", "mild", "moderate", "marked", and "extreme," and, in the fourth area, on a scale of none, one or two, three, four or more.[2] 20 C.F.R. § 404.1520a(c)(4). For a mental impairment to be found "severe" at step two of the five-step sequential evaluation process, there generally must be a rating of "moderate" or "extreme" in one of the first three areas or a rating of more than "none" in the fourth area. § 404.1520a(d)(1). If mental impairments are found to be severe at step two, then it further must be determined if the severity of the impairments meet or equal any of the *Listings*. § 404.1520a(d)(2).

---

[2] It appears that these frequencies are per year and that the episodes must last at least two weeks. See *Listings* § 12.00C4.

This special technique must be followed "at each level in the administrative review process." 20 C.F.R. § 404.1520a(a); *Listings*, § 12.00I. At the initial and reconsideration levels, agency reviewers must complete a standard form — the Psychiatric Review Technique Form ("PRTF") — which guides and records their findings regarding the special-technique factors. § 404.1520a(e); S.S.R. 96-8p; POMS DI 24505.025. The PRTF is not required at the ALJ and Appeals Council levels; instead, "the written decision [at each level] must incorporate the pertinent findings and conclusions based on the technique. . . . The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section [§ 404.1520a]." § 404.1520a(e)(4).

If, under the special technique, it is determined that a claimant's severe impairments do not satisfy a listing's severity criteria — or it is otherwise determined that the impairments do not satisfy a listing's non-severity criteria — then the claimant's mental RFC will be assessed for the purpose of determining the claimant's overall RFC for the purposes of steps four and five. 20 C.F.R. § 404.1520a(d)(3). The special technique's ratings of an impairment's severity is not an assessment of a claimant's mental residual functional capacity: the mental RFC assessment involves a more detailed assessment of the components of functional ability within each of the four broad functional areas of § 404.1520a(c)(3) and *Listings* § 12.00C. S.S.R. 96-8p; *Listings* § 12.00A.[3]

---

[3] "RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for the paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets

Just as the PRTF guides and records the application of the special technique at the initial and reconsideration levels for steps two and three, another special form usually guides and records the mental RFC assessment at those levels for steps four and five:  the Mental Residual Functional Capacity Assessment form (form SSA-4734-F4-SUP) ("MRFCA").  The MRFCA breaks out the four broad functional areas of the special technique into twenty work-related mental functional abilities under four categories:  (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  A claimant's degree of limitation for each mental functional ability is rated on a five-part scale:  not significantly limited, moderately limited, markedly limited, no evidence of limitation in this category, and not ratable on available evidence.  However, unlike the PRTF, use of the MRFCA apparently is not required by a regulation or a Social Security Ruling; it's use is required only by the Commissioner's Program Operations Manual Systems ("POMS"), DI 24510.060, which is, in essence, a claims-handling manual that is for only internal SSA use and is not binding on the Commissioner.  *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981); *Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989); *Phillips v. Colvin*, 721 F.3d 623, 630 (8th Cir. 2013); *Binder & Binder, P.C. v. Barnhart*, 481 F.3d 141, 151 (2nd Cir. 2007); *A.R.-W. ex rel. Reynolds v. Colvin*, No. 1:13-cv-369-JMS-DKL, *Entry Reviewing the Commissioner's Decision*, 2013 WL 6059063, *6 (S.D. Ind., Nov. 18, 2013).  POMS DI 24510.060 directs that only a psychiatrist or psychologist "perform the [mental RFC] analysis and decide the mental functional capacity" and

nor is equivalent in severity to a listed mental disorder."

prepare the MRFCA.

At the initial-review level in the present case, state-agency psychologist Joelle J. Larsen, Ph.D., completed a PRTF on which she recorded her opinion that Ms. Shadenfroh has no severe mental impairments. (R. 752.) Rating Ms. Shadenfroh's degree of functional limitations, Dr. Larsen recorded that Ms. Shadenfroh has "mild" limitations in all of the first three functional areas — including concentration, persistence, or pace — and "none" in the fourth area of episodes of decompensation. According to the special technique, this meant that Ms. Shadenfroh did not have a severe mental impairment. Dr. Larsen also recorded on the PRTF that Ms. Shadenfroh's impairments did not satisfy the criteria of 12.04 (affective disorders), the only listing that she examined. (R. 755.) Dr. Larsen found that neither the diagnostic description, the paragraph A medical findings, nor the paragraphs B and C severity criteria were satisfied. Dr. Larsen's PRTF and conclusions were affirmed on reconsideration review by agency psychologist William Shipley, Ph.D. (R. 104, 105, 775.) Most likely because the agency reviewers found no severe mental impairment, they did not complete a MRFCA for steps 4 and 5.

Applying the special technique in her decision (again, because the special technique applies at all levels of review), the ALJ rated the severity of Ms. Shadenfroh's mental impairments in the areas of activities of daily living and social functioning as "mild," and in the area of episodes of decompensation, as "none" — the same ratings that Dr. Larsen assigned. (R. 21-22.) However, the ALJ rated Ms. Shadenfroh's difficulties in maintaining

concentration, persistence, or pace differently than Dr. Larsen: where Dr. Larsen rated Ms. Shadenfroh's limitation as "mild" on the PRTF, the ALJ found that she had "moderate" difficulty. (R. 22.) Consistently with this "moderate" rating and the regulations, the ALJ found that Ms. Shadenfroh's mental impairments of major depressive disorder and anxiety were severe impairments at step two, rejecting the contrary opinions of the state-agency psychologists expressed on the PRTF.

Proceeding to step three, the ALJ evaluated whether Ms. Shadenfroh's impairments meet or medically equal any of the listings. She examined the criteria of listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).[4] Both listings are composed of (1) introductory paragraphs consisting of descriptions of the disorders; (2) paragraph A criteria consisting of sets of medical findings that "substantiate medically the presence of" the particular mental disorder; and (3) paragraphs B and C criteria consisting of sets of impairment-related functional limitations that are incompatible with the ability to do any gainful activity, with paragraph C limitations generally being more severe. *Listings* § 12.00A. Both listings 12.04 and 12.06 have identical paragraph B severity criteria, namely at least two of the following: (1) "marked" restriction of activities of daily living, (2) "marked" difficulties in maintaining social functioning; (3) "marked" difficulties in

---

[4] Drs. Larsen and Shipley examined only listing 12.04 (affective disorders) and found that neither the diagnostic criteria, the paragraph A medical-finding criteria, nor either of the paragraphs B or C severity criteria were satisfied. (R. 755, 762.) (Although they found that Ms. Shadenfroh's mental impairment of "mdd" [major depressive disorder] was not even severe, they presumably proceeded to evaluate listing 12.04's criteria because a listing may be satisfied based on a claimant's combination of all of her impairments, mental and physical, severe and non-severe.

maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration."[5]

Again directly disagreeing with the state-agency psychologists, the ALJ found that Ms. Shadenfroh's depression and anxiety satisfied the listings' disorder descriptions and paragraph A diagnostic criteria. (R. 21.) Because she found no "marked" restriction or difficulties and no episodes of decompensation, the ALJ found that the paragraph B criteria were not satisfied, (R. 21-22), and, therefore, found that Ms. Shadenfroh's impairments did not meet or equal any listing, (R. 16).[6]

Proceeding to determine Ms. Shadenfroh's mental RFC for the purposes of steps four and five — again, without the benefit of a MRFCA[7] — the ALJ did not provide any explicit discussion of Ms. Shadenfroh's moderate difficulties in maintaining concentration, persistence, or pace. She concluded only that the evidence "does not establish any cognitive deficits serious enough to prevent the performance of simple, routine and

---

[5] "Repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Listings* § 12.00C4.

[6] The ALJ found that the paragraph C criteria of both listings did not apply, (R. 15-16, 22), but did not provide any discussion of the C criteria. The required level of severity for Listing 12.04 is met when both paragraphs A and B are satisfied, or when paragraph C alone is satisfied. The level of severity for Listing 12.06 is met when both paragraphs A and B are satisfied, or when both paragraphs A and C are satisfied. From Ms. Shadenfroh's lack of challenge, the Court presumes that the more severe criteria of the paragraphs C were not a possibility, thus rendering the lack of paragraph B satisfaction dispositive for both listings.

[7] The Court notes that Ms. Shadenfroh raised no issue regarding the medical-opinion basis for the ALJ's finding of moderate difficulties in maintaining concentration, persistence, or pace; the lack of a MRFCA; or the medical-opinion basis for the ALJ's mental RFC restrictions.

repetitive tasks in a work environment free of fast paced production requirements over sustained periods on a competitive basis." (R. 23.) In her defined RFC, the ALJ limited Ms. Shadenfroh to "work involving simple, routine and repetitive tasks in a work environment free of fast-paced production requirements," (R. 24), and included this limitation in her hypothetical question to the vocational expert at the hearing, (R. 68).

Ms. Shadenfroh is correct that the ALJ's hypothetical violated the rule declared by the Court of Appeals for the Seventh Circuit in *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010):

> Our cases generally have required the ALJ to orient the VE [vocational expert] to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace. Our cases, taken together, suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.
>
>         *       *       *
>
> In most cases, however, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.
>
>         *       *       *
>
> As discussed, limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace.
>
> We acknowledge that there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand. Yet, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on those limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.

*O'Connor-Spinner*, 627 F.3d at 619-21 (citations and footnote omitted). *O'Connor-Spinner*

recognized two exceptions to its rule. First, if the record reveals that the vocational expert independently reviewed the medical evidence or heard the medical testimony that was directly relevant to the deficiencies, then the vocational expert's familiarity with the claimant's limitations can be assumed despite gaps in the ALJ's hypotheticals. *Id.* at 619. However, if an ALJ poses a series of increasingly restrictive hypotheticals to the expert, then the assumption is that the expert's attention was focused on the hypotheticals and not other evidence in the record or testimony. The second exception is that, if the ALJ's alternate phrasing accurately excludes the functions that the claimant cannot perform due to her deficiencies, then the vocational expert has been fully advised. In other words, when the ALJ's hypothetical excludes the triggers or causes of the claimant's deficiencies, then the deficiencies have been accommodated. The example that *O'Connor-Spinner* cited as the most frequent application of this second exception is when the evidence shows that a claimant's deficiencies in concentration, persistence, or pace are stress- or panic-related and the ALJ's hypothetical restricts the claimant to low-stress work. *Id.* at 620.

The ALJ clearly found that Ms. Shadenfroh has moderate difficulties in maintaining concentration, persistence, or pace, yet she did not include this mental functional limitation in her hypothetical to the vocational expert. She only limited Ms. Shadenfroh to the classic *O'Connor-Spinner* language of "simple, routine and repetitive tasks," adding only "in a work environment free of fast-paced production requirements." Because the ALJ limited the vocational expert's consideration to the terms of her hypothetical, (R. 68), and the

vocational expert acknowledged that she was so limited, (R. 81), *O'Connor-Spinner*'s first exception does not apply.

The Commissioner argues that the second exception applies. She argues, in essence, that the ALJ's RFC *must have* accommodated the moderate difficulties in maintaining concentration, persistence, or pace because only the ALJ found such moderate difficulties — no other opinion in the record, including the state-agency's own psychologists' opinions, so found. Thus, the natural and logical assumption is that the ALJ must have accommodated Ms. Shadenfroh's difficulties in concentration, persistence, or pace by translating them into the terms of his hypothetical. This argument might be persuasive if there were any evidence that the ALJ found that Ms. Shadenfroh had only a moderate difficulty in maintaining *pace*, because his RFC restriction of no "fast-paced production requirements" could accommodate such a moderate difficulty (depending on the degree of difficulty that Ms. Shadenfroh has). But the ALJ also defined a restriction to simple, routine, and repetitive tasks, which can only mean that he also found functional difficulties in concentration and/or persistence.

With no clear discussion of the nature of the difficulties that the ALJ found in Ms. Shadenfroh's concentration, persistence, or pace, the Court simply cannot independently determine whether the ALJ actually accommodated them in his hypothetical and the Court cannot simply trust or assume that the accommodation occurred. The Court agrees with Ms. Shadenfroh that *O'Connor-Spinner*'s second exception applies only if it is manifest,

clear, or obvious that the ALJ's alternative phrasing eliminates the tasks that a claimant's difficulties prevent her from performing. Here, there can be no dispute that such elimination is not manifest, clear, or obvious. The ALJ did not complete a MRFCA which likely would have identified both Ms. Shadenfroh's difficulties in concentration, persistence, or pace and their degrees of severity, and the ALJ did not otherwise articulate the MRFCA analysis.[8] As it is, therefore, the Court is entirely unable to trace the path of the ALJ's reasoning or to discern in her decision any logical bridge from the evidence to her conclusion in this respect. The Court cannot simply assume that the ALJ was consistent and correct.

The Commissioner argues a couple of other defenses of the ALJ's hypothetical. First, she states that the ALJ's moderate finding was for the purpose of step three's evaluation of listings satisfaction which is separate from step-five's evaluation of RFC. The Commissioner's argument is obscure. As noted above, the evaluation of mental RFC for steps four and five is a more detailed analysis than the evaluation of impairment severity

---

[8] As noted, the state-agency psychologists also did not complete a MRFCA most likely because the result of the PRTF was a finding that she did not have a severe mental impairment at step two. But, ALJ could have requested that the state-agency psychologists or another consulting psychologist prepare a MRFCA once he determined that Ms. Shadenfroh had severe depression and anxiety. At least, the ALJ should have articulated his own mental RFC analysis, tracking the components of the MRFCA.

The Court also notes that another version of *O'Connor-Spinner*'s second exception is when the ALJ includes in his hypothetical the functional limitations into which a medical expert has translated a claimant's difficulties in concentration, persistence, or pace. *See Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002); *Williams v. Colvin*, No. 1:12-cv-613-DKL-WTL, *Entry*, 2013 WL 5487367 (S.D. Ind., Sept. 30, 2013); *Presser v. Colvin*, No. 1:12-cv-835-SEB-DKL, *Report and Recommendation* [doc. 25] at 6-9, *adopted by the court*, 2013 WL 5309889, *3-4 (S.D. Ind., Sept. 23, 2013). This version does not apply here because there is no medical opinion in the record prescribing a limitation to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements.

at steps two and three, delving into the work-related abilities within the four broad functional areas of the special technique. But the inquiries are complementary, the detailed RFC evaluation rising out of the broad base of the special technique. See *Listings* § 12.00A. A claimant's found moderate difficulties in maintaining concentration, persistence, or pace do not simply disappear after step three, so she starts with an entirely clean slate of no difficulties for the RFC analysis. Such a finding or assumption by an ALJ would be inconsistent and not supported by substantial evidence.

Second, the Commissioner argues that, as long as an ALJ's RFC finding is supported by substantial evidence and is consistent with her hypothetical question, then *O'Connor-Spinner*'s requirement of a logical (and medical) connection between the RFC and found functional limitations does not apply. The Court disagrees and finds this position directly contrary to *O'Connor-Spinner*. This is simply a reiteration of the Commissioner's argument that functional limitations found as part of the special technique simply disappear after step three. At any rate, the Court cannot imagine a situation where an ALJ's RFC finding which does not accommodate found functional limitations could be supported by substantial evidence.

The ALJ's hypothetical to the vocational expert is not supported by substantial evidence and is compromised by legal error. Therefore, the vocational expert's testimony is tainted and the ALJ's reliance thereon is not supported by substantial evidence.

**Significant numbers of jobs.** Ms. Shadenfroh argues that the numbers of jobs that the vocational expert testified exist that she can perform are not significant, as the ALJ found.

The VE testified that a person with Ms. Shadenfroh's RFC, as defined by the ALJ, and vocational characteristics (age, education, transferability of skills) could perform the work of "baker helper," *D.O.T.*[9] 524.687-022, (R. 67, 38); usher, *D.O.T.* 344.677-014; and children's attendant, *D.O.T.* 349.677-018. She testified that the following numbers exist for each job:

| | | |
|---|---|---|
| baker helper: | 2,112 in Indiana | 93,577 nationally |
| usher | 117 in Indiana | 7,949 nationally |
| children's attendant | 125 in Indiana | 8,475 nationally |

(R. 68-69, 94, 98-99.)[10] The vocational expert also testified that Ms. Shadenfroh had past work as a baker helper (same *D.O.T.* classification), (R. 36), but, because it was not performed full-time, the ALJ determined that it was not substantial gainful activity and, thus, did not qualify as past relevant work for the purposes of step four.

It is undisputed that the "baker helper" job identified by the vocational expert, *D.O.T.* 524.687-022, is actually titled "bakery worker, conveyor line." The *D.O.T.* does have

---

[9] The *D.O.T.* is the Department of Labor's *Dictionary of Occupational Titles.* ALJs are required to take administrative notice of the vocational information in the *D.O.T.* 20 C.F.R. § 404.1566(d)(1); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

[10] The vocational expert first testified to the total numbers of jobs, both full-time and part-time, (R. 68-69), then later provided the multiplier to reduce those numbers to only full-time jobs, (R. 94, 98-99).

two "baker helper" jobs, *D.O.T.* 313.684-010 and *D.O.T.* 526.686-010, but the former is classified as "medium" work and the latter as "heavy" work, both beyond the "light" RFC to which the ALJ restricted Ms. Shadenfroh. The "bakery worker, conveyor line" job is classified as "light" work but Ms. Shadenfroh argues that she cannot perform it because work on a conveyor line contradicts the ALJ's restriction to a "work environment free of fast-paced production requirements" and because, while the *D.O.T.* describes the job as involving no more than occasional reaching and handling, "common sense" suggests otherwise, which would contradict the ALJ's restriction of her to only occasional reaching and never reaching at shoulder level or above with both upper limbs.

The Commissioner argues that, because the effect of Ms. Shadenfroh's restriction against fast-paced work on her ability to perform the conveyor-line aspect of the "bakery worker, conveyor line" job was not explored at the hearing, Ms. Shadenfroh forfeited any such issue. However, the Court agrees with Ms. Shadenfroh that the vocational expert's misidentification or misdescription of the job at the hearing as "baker helper" — indicating no conveyor line aspect — prevented such a forfeiture. While, as noted, the vocational expert also identified one of Ms. Shadenfroh's past jobs as "baker's helper" at the hearing, (R. 36), there was no discussion about the nature of the work that she performed in that job, particularly whether it was work on a conveyor line, which might have helped clue in Ms. Shadenfroh to the actual job that the vocational expert had in mind, because the vocational expert testified that Ms. Shadenfroh had the RFC to perform this past job on a full-time

basis, (R. 69).

The Commissioner also argues that, despite the vocational expert's mistake in the *title* of the job, she testified that the *description* of the job matched Ms. Shadenfroh's past work and her current RFC restrictions. Ms. Shadenfroh argues, as noted above, that common sense suggests that the job actually requires more than the "occasional" reaching and handling at which the job is classified. She also points to the vocational expert's lukewarm response when asked about the same reaching and handling requirements of the "baker helper" jobs. (R. 75.)

Whether Ms. Shadenfroh can successfully challenge the *D.O.T.* description of the "bakery worker, conveyor line" job's reaching and handling requirements will wait for another day because the Court is not satisfied on this record that the vocational expert's testimony regarding this job is reliable. It is uncertain whether the vocational expert intended to use the *D.O.T.* job of "baker helper" or "bakery worker, conveyor line" to classify Ms. Shadenfroh's past work and the job that she can perform with the ALJ's defined RFC. Because of this essential ambiguity, the numbers of jobs that the vocational expert testified exist for this job are unreliable and cannot support the ALJ's finding of not disabled.

The question then becomes whether the numbers of the other two jobs to which the vocational expert testified — usher and children's attendant — qualify as "significant."

The vocational expert testified to a total number, for both jobs, of 242 in Indiana and 16,424 nationally. As the parties recognize, neither the Social Security Act nor the Commissioner's regulations or rulings provide any definition, standard, or formula for significance, or a threshold number for significance, and the Commissioner does not argue any standard or number here. The Court is loath to define a hard number as well, if Congress and the Commissioner have not. Both sides are left to argue only the numbers that have been found to be significant in other decisions.

The Social Security Act provides that "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2). The Act then defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* The Commissioner defines the relevant geographic area in the same terms. 20 C.F.R. § 404.1566(a). Neither the Act nor the Commissioner's regulations or rulings (so far as the Court has been advised) define the terms "region" or "several regions" and the Commissioner does not argue or propose any definition here. Therefore, because the vocational expert provided only state and national numbers — no "regional" numbers — and the Act and § 404.1566(a) clearly provide that the significance of job numbers shall be judged based on less than the national totals (*viz.*, the claimant's

"region" of residence and "several other regions of the country"), only the vocational expert's state numbers are relevant to the Court's analysis.

With the Commissioner proposing no number as being significant and suggesting no standard or logical basis for judging whether a particular number is significant in a region, the Court has little hesitation in finding that a total of 242 jobs in Indiana for ushers and children's attendants is not a significant number.

The closest to 242 jobs that the Commissioner comes is pointing to *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993), in which the Court of Appeals for the Seventh Circuit wrote only that the argument that 1,400 jobs is not a significant number is "unsupported by case law" and included in its list of supporting citations the case of *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987), which it described as holding that 174 jobs are a significant number. The other numbers held as significant by the other decisions cited by the Court were:  500; 675; 850-1,000; 1,266; and 1,350.  In *Allen*, the Eleventh Circuit addressed a situation where the vocational expert testified that 174 jobs existed in the plaintiff's "local economy," 1,600 in his state, and 80,000 nation-wide.  The plaintiff attempted to prove that less than 174 jobs existed in his "local economy."  The *Allen* court found that the plaintiff's evidence in itself was not probative and also held that the proper focus is not the local economy:  "[t]he appropriate focus under the regulation, however, is the national economy."  In support, it cited *Mathews v. Eldridge*, 424 U.S. 319, 336 and n. 14 (1976), but that opinion only quoted the language of the Act and appended a footnote reading:  "Work which 'exists in the

national economy' is in turn defined as 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.' § 423(d)(2)(A)."  As indicated above, both the Act and regulation define the proper focus as the claimant's region of residence or several regions of the country, not the nation as a whole as *Allen* held.  Thus, *Allen* is not persuasive authority, and, to that extent, neither is *Lee*.  Without *Allen*, the next lowest number held as significant in the decisions cited in *Lee* was 500, which is more than double the 242 jobs at issue in this case.  At any rate, *Lee* did not *hold* that 174 jobs is a significant number; it held only that the argument that 1,400 jobs is not significant was unsupported in the case law.

The Commissioner also relies on *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009).  Noting that the plaintiff did not argue that the 4,000 jobs at issue in that case was insignificant, the *Liskowitz* court wrote: "nor would such an argument be plausible.  As few as 174 jobs has been held to be significant, *see Allen v. Bowen*, [cite], and it appears to be well-established that 1,000 jobs is a significant number.  *See Lee*[ *v. Sullivan*, and other decisions]."  At least three considerations lead the Court to not accord this passage the weight with which the Commissioner loads it.  First, the basic unpersuasiveness of *Allen* has been explained above.  Second, because 4,000 jobs were the issue in *Liskowitz*, its citation to *Allen* can be construed as *dicta*; *i.e.*, by citing *Allen*, the Court did not *hold* that 174 jobs is a significant number.  Third, the passage's strongest endorsement of a significant number —its "well-established" 1,000 — is far above the 242 jobs presently at issue.

With no logical, principled standard by which to judge whether numbers of jobs are "significant" under the Act, courts' are left with hunches that are constrained only by the numbers that are held significant in precedential decisions. As such, the Commissioner, who has the burden at step five, must present clearer precedent than she has in this case. 242 jobs strikes the Court as not a significant number of existing jobs. Therefore, the elimination of the baker-helper jobs is not harmless and Ms. Shadenfroh's claim must be remanded to the Commissioner for re-evaluation and/or re-articulation of the baker-helper job and its numbers.

## Conclusion

Because the ALJ failed to account for Ms. Shadenfroh's moderate difficulties in concentration, persistence, or pace in his hypothetical to the vocational expert, and because the vocational expert's testimony regarding the numbers of jobs existing for Ms. Shadenfroh is ambiguous, the ALJ's reliance on the resulting expert opinion was unreasonable and not supported by substantial evidence. Therefore, the decision of the Commissioner denying Ms. Shadenfroh's application for benefits should be reversed and her claim should be remanded to the Commissioner for re-evaluation and/or re-articulation consistent with the explanations herein.

The Court appreciates the focus and quality of the briefs by Ms. Shadenfroh's counsel, Timothy J. Vrana.

**Notice regarding objections**

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**DONE this date:** 02/28/2014

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.